[Cite as *State v. Banks*, 2015-Ohio-5413.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**Nos. 102360, 102361, 102362, and 102363**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## EARL BANKS

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED IN PART, REVERSED IN PART,
AND REMANDED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case Nos. CR-14-581555-A, CR-14-582703-B,
CR-14-582808-A, and CR-14-583146-A

**BEFORE:** Jones, P.J., S. Gallagher, J., and Laster Mays, J.

**RELEASED AND JOURNALIZED:** December 24, 2015

**ATTORNEY FOR APPELLANT**

Aaron T. Baker
38109 Euclid Avenue
Willoughby, Ohio 44094


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

BY: Timsi Pathak
        Daniel T. Van
Assistant County Prosecutors
The Justice Center, 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113

LARRY A. JONES, SR., P.J.:

{¶1} Defendant-appellant, Earl Banks, appeals his convictions stemming from multiple charges brought in four cases. We affirm in part, reverse in part, and remand.

**Procedural History and Facts**

{¶2} In 2014, Banks was charged in four cases. In Cuyahoga C.P. No. CR-14-581555-A, he was charged with escape. In Cuyahoga C.P. No. CR-14-582703-B, he was charged with kidnapping with one- and three-year firearm and repeat violent offender specifications, and a notice of prior conviction; two counts of aggravated robbery with one- and three-year firearm and repeat violent offender specifications, and a notice of prior conviction; two counts of felonious assault with one- and three-year firearm and repeat violent offender specifications, and a notice of prior conviction; having weapons while under disability with one- and three-year firearm specifications; burglary with a repeat violent offender specification and a notice of prior conviction; aggravated menacing; and vandalism. In Cuyahoga C.P. No. CR-14-582808-A, Banks was charged with grand theft and burglary with a repeat violent offender specification and a notice of prior conviction. In Cuyahoga C.P. No. CR-14-583146-A, Banks was charged with burglary and theft.

{¶3} Prior to the commencement of trial, Banks pleaded no contest to escape in C.P. No. CR-14-581555-A and the court found him guilty. The matter then proceeded to trial on the remaining cases. Banks was tried with his codefendant Amy Sutton.

{¶4} In C.P. No. CR-582703-B, victim Denise Holloron, testified that on

December 24, 2013, she was at home when she heard someone kicking in the door to her rented house. Holloron explained that the house had an exterior door that led to a small entryway and then an interior door that led to her part of the house. Holloron ran to her bedroom and hid in one of the four lockers she used for closets and called 911. While she was on the phone with dispatch, Holloron heard a voice calling, "Where's Amy? Where's Amy?" Holloron, who knew Banks, recognized his voice. Banks ran upstairs and started kicking in the upstairs door. Banks then called for Holloron, came into her bedroom, found her hiding, and asked her where Amy was; Holloron said she did not know. Banks left.

{¶5} Rick Rzepka, the owner of the house, testified that Holloron told him that someone broke into the house and damaged some doors and frames. The landlord observed the damage to his property and noted that an interior door and frame were "smashed" and the upstairs apartment door and frame were "completely smashed in." He estimated the damage at $1,500.

{¶6} In C.P. No. CR-14-583146-A, Silvester Bericic testified that he met Banks in prison in 2010 and they maintained a friendship outside of prison. In late October 2014, Banks came to Bericic's house while Bericic was asleep. Banks kicked in the front door and came into the apartment. Bericic woke up and saw Banks take his guitar. Bericic picked Banks out of a photo lineup as the man who stole took his guitar.

{¶7} C.P. Nos. CR-14-582703-B and CR-14-582808-A included Banks's co-defendant, Amy Sutton. The following facts are taken from Sutton's appeal. *State*

*v. Sutton*, 8th Dist. Cuyahoga Nos. 102300 and 102302, 2015-Ohio-4074.

{¶8} In the first case, on February 7, 2014, Ryan Swanson found an online advertisement for escort services placed by Sutton, which included photos of Sutton and her phone number. Swanson contacted Sutton via text message and made arrangements to meet for a sexual encounter for which Swanson was to pay her $100. At the time, Sutton and her boyfriend, Banks, were residing at the home of Donald Tanks. Sutton instructed Swanson to come to Tanks's home in Cleveland.

{¶9} When Swanson arrived at the house, Sutton let him in and led him into a bedroom. Swanson testified that he placed $100 on the dresser and began to undress. Swanson was completely nude and Sutton was in the process of disrobing when Swanson heard a "kick" from outside the room, the bedroom doorjamb cracked, and Banks entered the room. Swanson reached for his gun and he and Banks began to struggle over the gun. The fight spilled out of the bedroom and into the kitchen.

{¶10} Donald Tanks testified that he was sleeping in a front bedroom of the residence when he woke up and found Swanson, whom he did not know, naked and wrestling with Banks on the kitchen floor. At Banks's instruction, Tanks struck Swanson over the head with a chair. Tanks testified that the gun discharged during the struggle and Swanson was shot in the right thigh. In contrast, Swanson testified that Banks gained control of the gun and shot him twice from a distance of ten feet and then pistol whipped him. Tanks pushed Swanson out of the home and ordered Sutton to give him his car keys. Sutton threw Swanson's car keys outside and left the home. Banks

also left, carrying Swanson's gun.

{¶11} Swanson flagged down a passing police cruiser driven by Cleveland Police Sergeant Bryan Moore. Swanson first told Sergeant Moore that he had been shot and robbed at a gas station but later admitted he had been shot at Tanks's house.

{¶12} Sutton returned to Tanks's house at his insistence and told police that she met Swanson online and that they had agreed he would pay her $100 for "adult dances and talk." Sutton alleged that when Swanson arrived, he took his clothes off but did not have the money and instead pulled out a gun and tried to rob or rape her at gunpoint. According to Sutton, her boyfriend "Dwayne Wilson" entered the room and the fight began. She claimed that she did not see the gun go off.

{¶13} In regard to the other case, Michael Levine testified that in the early morning hours of February 12, 2014, Sutton and Banks, whom he knew, were at a Cleveland house he was helping his grandmother rent out. Sutton and Banks had expressed an interest in renting a unit and Levine allowed them to spend the night at the home.

{¶14} Levine left the keys to his mother's car, a Chevy Impala, on a TV stand and slept upstairs while Sutton and Banks slept on the ground level. When he woke the next morning the keys, car, and Sutton and Banks were gone. He called and texted Sutton and was strung along with promises that the car would be returned. When it was not, he reported the car stolen. Levine admitted that he had previously allowed Sutton and Banks to use his mother's car in exchange for drugs, but this time he did not give the

couple permission to use the car.

{¶15} Cleveland Police Detective Phillmore Evans testified that he interviewed Sutton at the police station about the shooting of Swanson. Sutton told Detective Evans that she had invited her boyfriend "Dwayne Wilson" to spend the night with her. When Wilson arrived, he found Swanson attempting to rape her at gunpoint.

{¶16} Less than an hour after the interview concluded and Sutton left the precinct, Cleveland police officer Kenneth Allen spotted the Chevy Impala, and arrested Banks. Sutton arrived on scene and asked to retrieve her cell phone from the Impala. She was detained and returned for a second interview during which she admitted "Dwayne Wilson" was really Earl Banks and Banks was the individual involved in Swanson's shooting.

{¶17} The jury convicted Banks in C.P. No. CR-14-582703-B of kidnapping with one- and three-year firearm and repeat violent offender specifications, and the notice of prior conviction; two counts of aggravated robbery with one- and three-year firearm and repeat violent offender specifications, and the notice of prior conviction; two counts of felonious assault with one- and three-year firearm, and repeat violent offender specifications, and the notice of prior conviction; an amended count of burglary with repeat violent offender specifications and the notice of prior conviction; menacing; and vandalism.

{¶18} In CR-14-582808-A, the jury convicted Banks of theft and burglary with the repeat violent offender specification and a notice of prior conviction specification and in

CR-14-583146-A, the jury convicted Banks of burglary and theft. The trial court sentenced Banks to a total sentence of 19 years in prison and ordered him to pay restitution.

{¶19} Banks filed a notice of appeal as to each case and this court sua sponte consolidated the appeals for briefing and disposition.

### Assignments of Error[1]

I. Appellant was denied effective assistance of counsel in violation of the sixth amendment of the United States Constitution when trial counsel permitted the jury to make the determination that appellant was a repeat violent offender, rather than the trial court itself.

II. The trial court committed prejudicial error in permitting the jury to determine the existence and nature of appellant's prior conviction for an offense of violence, in violation of R.C. 2941.149.

III. The trial court committed prejudicial error when it refused to properly consider or grant appellant's request that each incident be tried separately.

IV. Appellant was denied effective assistance of counsel in violation of the Sixth Amendment of the United States Constitution when trial court failed to oppose the joinder of defendants, thus preventing appellant's ability to confront his co-defendant Amy Sutton regarding statements made which implicated him and resulting in conflicting defenses.

---

[1] In Banks's appellate brief, he "incorporated" the arguments from his first assignment of error into his second assignment of error. App.R. 12(A)(2) provides that an appellate court "may disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based or fails to argue the assignment separately in the brief, as required under App.R. 16(A)." App.R. 16(A)(7) provides that the appellant's brief shall include "[a]n argument containing the contentions of the appellant *with respect to each assignment of error presented for review* and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies" (Emphasis added). The rules do not allow for arguments in multiple assignments of error to be combined or incorporated by reference. But because cases are best decided on their merits, we will consider his assignments of error.

V. The trial court erred to the prejudice of appellant, when it failed to address the pro-se notice of termination of representation of his trial counsel. Such failure denied appellant his right of due process under the law.

{¶20} We consider the assignments of error out of order for ease of discussion.

## Law and Analysis

### I. Escape Case

{¶21} Prior to trial, Banks pleaded no contest in C.P. No. CR-14-581555-A and the court found him guilty. The court sentenced him to 18 months in prison to run concurrent with his other cases. Banks filed a notice of appeal in C.P. No. CR-14-581555-A but does not assign any errors nor make any arguments in his brief as to that case. Therefore, we summarily affirm his conviction and sentence in Case No. CR-14-581555-A.

### II. Trial Court Erred in Submitting the Repeat Violent Offender Specifications to the Jury

{¶22} In this case, the trial court submitted the repeat violent offender specifications to the jury so that the jury was tasked with determining whether Banks was a repeat violent offender in Case Nos. CR-14-582703-B and CR-14-582808-A. The jury found Banks to be a repeat violent offender, as charged. In CR-14-582703-B, the trial court sentenced Banks to an additional five years on the repeat violent offender specification attached to the aggravated robbery charge.

{¶23} During the sentencing hearing, the court stated the following:

* * * [O]n Count 3 [aggravated robbery] this Court sentences the Defendant in Case No. 582703 to three years on the firearm specification, which will be served prior to and consecutive with 11 years on the aggravated robbery. And the Court is going to add on five years for the repeat violent offender specification, for a total of 19 years on Count 3.

{¶24} In his second assignment of error, Banks argues that the trial court committed prejudicial error when it submitted the repeat violent offender specifications to the jury. We find merit to his argument.

{¶25} A repeat violent offender is a person who: (1) is being sentenced for committing or complicity in committing aggravated murder, murder, a felony of the first or second degree that is an offense of violence, an attempt to commit any of these offenses if the attempt is a felony of the first or second degree, or a substantially equivalent offense; and (2) was previously convicted of or pleaded guilty to one of the aforementioned offenses. R.C. 2929.01(DD).

{¶26} Since its enactment in 1996, R.C. 2941.149 has provided that "[t]he court shall determine the issue of whether an offender is a repeat violent offender." *See* 1995 Ohio S.B. 269. Thus, "[b]y statute, the repeat violent offender specification is to be determined by the trial court, not the jury." *State v. Brown*, 5th Dist. Stark No. 2014CA00102, 2015-Ohio-1006, *11, *discretionary appeal not allowed,* 143 Ohio St.3d 1407, 2015-Ohio-2747, 34 N.E.3d 134, citing R.C. 2941.149(B); *State v. Bostick*, 9th Dist. Summit No. 26880, 2013-Ohio-5784, ¶ 14; *State v. Hunt*, 10th Dist. Franklin No. 12AP-1037, 2013-Ohio-5326, ¶ 76, (recognizing that a defendant may waive a jury on a weapons under disability charge but, "by statute," the repeat violent offender specification

"is to be determined by the court rather than the jury"); *State v. Brown*, 10th Dist. Franklin No. 10AP-836, 2011-Ohio-3159, ¶ 16, citing R.C. 2941.149(B) ("If an indictment contains a repeat violent offender specification, it is the court that shall determine the issue of whether the offender is a [repeat violent offender]."); *State v. Brumley*, 12th Dist. Butler No. CA2004-05-114, 2005-Ohio-5768, ¶ 20 ("[p]ursuant to R.C. 2941.149(B), the sentencing court, not a jury, must determine an offender's status as a repeat violent offender").   But in this case, the trial court submitted the issue to the jury.   To do so was in error.

{¶27} R.C. 2941.149(B) is clear; the trial court *shall* determine the issue of whether an offender is a repeat violent offender.   The use of the word shall denotes that compliance is mandatory, not discretionary.   The Ohio Supreme Court has long held that "the use of the word 'shall' in a statute must be construed as imposing a mandatory duty unless there appears a clear and unequivocal legislative intent that it receive a meaning other than its ordinary meaning."   *State ex rel. Ewing v. Without A Stitch,* 37 Ohio St.2d 95, 103, 307 N.E.2d 911 (1974), citing *Dorrian v. Scioto Conservation Dist.*, 27 Ohio St.2d 102, 271 N.E.2d 834 (1971).   "'Although it is true that in some instances the word, 'may,' must be construed to mean 'shall,' and 'shall' must be construed to mean 'may,' in such cases the intention that they shall be so construed must clearly appear. Ordinarily, the word 'shall' is a mandatory one, whereas 'may' denotes the granting of discretion.'"   *Dorrian* at 108, quoting *Dennison v. Dennison*, 165 Ohio St. 146, 134 N.E.2d 574 (1956).

**{¶28}** R.C. 2941.149(B) is devoid of any legislative intent that the word "shall" should be construed as anything other than showing the mandatory nature of the statute, let alone the "clear and unequivocal legislative intent" that is required to change the word's meaning. Thus, a trial court is left without discretion in the matter and may not submit the issue to the jury for decision.

As the Ohio Supreme Court noted in *State v. Foster,* 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, "[u]nlike all other penalty-enhancing specifications, the court, not the jury, makes the necessary factual findings for convicting the offender of being a repeat violent offender * * * ." *Id.* at ¶ 71.

**{¶29}** Surprisingly, this issue has not been raised often since the enactment of R.C. 2941.149 almost 20 years ago. Commonly, the challenge is to the constitutionality of the repeat violent offender specification itself. *See Foster* (holding that portions of R.C. 2929.14(D)(2)(b) that required judicial fact-finding are in violation of the Sixth Amendment and the United States Supreme Court's decisions in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004)); *see also State v. Hunter*, 123 Ohio St.3d 164, 2009-Ohio-4147, 915 N.E.2d 292 (The Sixth Amendment does not preclude a sentencing court from considering information in the judicial record from the prior conviction when making a repeat violent offender determination.).

**{¶30}** In the case at bar, the state argues that the submission of the repeat violent offender specifications to the jury did not result in reversible error because defense

counsel told the court it was not asking the court to decide the issue; thus, counsel "invited" or "waived" any error. We disagree. The use of the word "shall" connotes the imposition of a mandatory obligation, which cannot be waived by a failure to object or by "inviting" the error. Rather, it is incumbent on the trial court to follow the plain meaning of the statute.

{¶31} The state cites this court's decision in *State v. Hines*, 8th Dist. Cuyahoga No. 90125, 2008-Ohio-4236. In *Hines*, the trial court permitted evidence of the repeat violent offender specification to be presented to the jury and submitted the specification to the jury for verdict. The jury found the defendant guilty of the specification and the trial court sentenced him to a total of 25 years in prison, but did not add time for the repeat violent offender specification. The *Hines* court considered that defense counsel had not moved to bifurcate the specification, did not object to the specification being submitted to the jury, and Hines's prior convictions were revealed at trial as part of defense counsel's trial strategy. The *Hines* court ultimately concluded that Hines was not prejudiced by the court submitting the specification to the jury.

{¶32} In *Hines*, this court noted "that R.C. 2941.149(B) states that the court shall determine the issue," but still determined it was not error to submit the issue to the jury because: (1) defense counsel did not move to bifurcate the repeat violent offender specification or object to the matter being submitted to the jury; (2) no judicial fact-finding was required pursuant to *Foster*; and (3) Hines's prior convictions were already revealed at trial as part of his trial strategy.

{¶33} *Hines*, however, was decided prior to the Ohio Supreme Court's decision in *Hunter*, 123 Ohio St.3d 164, 2009-Ohio-4147, 915 N.E.2d 292. In *Hunter*, the Ohio Supreme Court stated that "R.C. 2941.149(B) specifically directs that '[t]he court shall determine the issue of whether an offender is a repeat violent offender.'" *Id.* at ¶ 12. The *Hunter* court explained that *Foster* did not eliminate the repeat violent offender specification as defined in R.C. 2929.01 and a trial court does not engage in improper judicial fact-finding in violation of a criminal defendant's right to a jury trial by designating an offender as a repeat violent offender. *Id.* at ¶ 27, 40.

{¶34} Thus, pursuant to *Foster* and *Hunter*, it is clear that the Ohio Supreme Court has upheld the legislature's intent for a trial court to determine whether an offender qualifies as a repeat violent offender. Accordingly, we decline to follow *Hines* in this case.

{¶35} The dissent contends that submitting the repeat violent offender specification to the jury is not reversible error unless a defendant demonstrates prejudice. We disagree as stated above — submission to the jury on the issue is per se reversible error. But, in this case, if we were to consider whether Banks was prejudiced by the trial court's error, we would find that he was.

{¶36} The prejudice to Banks is shown through the court informing the jury was that it could consider the repeat violent offenders specification as "other acts evidence" and because Banks received an additional five years on the specification. The trial

court instructed the jury that it could consider Banks's prior conviction, which was the basis for the repeat violent offender specification, as follows:

> to decide whether [the prior conviction] proves the absence of mistake or accident; or the defendant's motive, opportunity, intent, purpose, preparation, or plan to commit the offense charged in this trial; or knowledge of circumstances surrounding the offense charged in this trial; or the identity of the person who committed the offense in this trial.

Evid.R. 404(B) defines "other acts evidence" as follows:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. In criminal cases, the proponent of evidence to be offered under this rule shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

{¶37} The record shows that the state never moved to use Banks's 2010 burglary conviction as other acts evidence. Although, as noted by the dissent, Banks's prior conviction was admitted into evidence as part of his having weapons while under disability count, it was pursuant to the repeat violent offender specification that the jury was erroneously instructed that it could consider his prior conviction as other acts evidence. And Banks was further prejudiced because the trial court sentenced him to an

additional five years on the repeat violent offender specification that it incorrectly submitted to the jury.

{¶38} In light of the above, the trial court clearly erred when it submitted the repeat violent offender specifications to the jury.

{¶39} The second assignment of error is sustained.

## III.   Court Gave Prejudicial Jury Instructions

{¶40} We sua sponte raise the issue of the instruction the court gave the jury on the repeat violent offender specifications and find that the court's instruction to the jury was incorrect.   Because this issue was not raised on appeal, we review it for plain error. "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."   Crim.R. 52(B).

{¶41} The trial court instructed the jury as follows:

Now, the next specification, repeat violent offender, will apply to Mr. Banks in Counts 1, 2, 3, 4, 5, 7, and 8. * * * If your verdict is guilty of kidnapping in Count 1, you will separately decide whether the defendant, Earl Banks, is a repeat violent offender and was or was not previously convicted of or pled guilty to and served a prison term for committing a felony of the first or second degree * * *, to wit: * * * on or about the 16th day of September 2010 in the Court of Common Pleas, Cuyahoga County, Ohio, Case Number CR 539150, having been convicted of the crime of

burglary in violation of Revised Code Section 2911.12 of the State of Ohio.

* * *

**{¶42}** This portion of the trial court's instruction comports with the definition of a repeat violent offender under R.C. 2929.01(CC), except that the trial court added an additional requirement not found in the statute, that being a requirement that Banks had served a prison term on the previous conviction. R.C. 2929.01(CC) contains no such requirement.

**{¶43}** The trial court continued by instructing the jury as follows:

[A] [r]epeat violent offender is a person about whom the following applies. * * * The person has been convicted of or has pled guilty to and is being sentenced for committing, for complicity in committing, or for attempting to commit aggravated murder, murder, involuntary manslaughter, a felony of the first degree other than one set forth in Chapter 2925 of the Revised Code, a felony of the first degree set forth in Chapter 2925 of the Revised Code that involved an attempt to cause serious physical harm to a person, or that resulted in serious physical harm to a person, or a felony of the second degree that involved an attempt to cause serious physical harm to a person, or that resulted in serious physical harm to a person.

Or the person previously was convicted of or pled guilty to and served a prison term for any of the following: The aggravated murder, murder, involuntary manslaughter, rape, felonious sexual penetration in violation of former Section 2907.12 of the Revised Code, a felony of the first or second degree that resulted in the death of a person or physical harm to a person, or complicity in it or attempt to commit any of those offenses.

**{¶44}** This portion of the trial court's instruction closely mirrors the former definition of a repeat violent offender, former R.C. 2929.01(DD)(1) and (2)(a)(i), which

was in effect until August 3, 2006. As it applies to this case, former R.C. 2929.01(DD)(1) and (2)(a)(i) would have required the jury to make multiple findings, including that Banks's 2010 burglary case resulted in both a prison term *and* physical harm to the victim, or the victim's death, or complicity in it or attempt to commit the offense.[2] In contrast, R.C. 2929.01(CC) requires the jury to find, as to his prior conviction, only that he has been convicted of a second-degree felony offense of violence.[3] Thus, by instructing the jury as it did, the trial court gave the jury incorrect and conflicting definitions of a repeat violent offender.

{¶45} The trial court further instructed the jury:

[1] Evidence was received that the defendant was convicted of burglary [in 2010]. That evidence was received only for two limited purposes. It was not received, and you may not consider it to prove the character of the defendant in order to show that he acted in conformity or accordance with that character.

[2] If you find that the defendant was convicted of burglary, you may consider that evidence only for the following purposes: To test the defendant's credibility or believability and the weight to be given the defendant's testimony; and to decide whether it proves the absence of mistake or accident; or the defendant's motive, opportunity, intent, purpose, preparation, or plan to commit the offense charged in this trial; or

---

[2] The state introduced no evidence that Banks's 2010 case resulted in harm to the victim.

[3] Burglary under of R.C. 2911.12 is an offense of violence as defined by R.C. 2901.01(A)(9).

knowledge of circumstances surrounding the offense charged in this trial; or the identity of the person who committed the offense in this trial. That evidence cannot be considered for any other purpose.

**{¶46}** There are two errors with this portion of the court's instruction. First, the trial court instructed the jury that it could consider evidence of Banks's 2010 burglary conviction to test Banks's credibility, believability, and the weight to be given to his testimony. But Banks did not testify. At sidebar, Banks's counsel objected and the court stated that it would "erase" that part from the jury instructions, "but since he didn't testify, I think [the jury will] find that doesn't apply." The record shows that the court did not submit the written portion of section [2] of the above instructions to the jury, but also did not orally correct its instruction.

**{¶47}** Second, as already discussed, the court improperly instructed the jury that it could consider his prior conviction as other acts evidence. While a trial court has broad discretion to decide how to fashion jury instructions, it must "fully and completely give the jury all instructions which are relevant and necessary for the jury to weigh the evidence and discharge its duty as the fact finder." *State v. White*, 142 Ohio St.3d 277, ¶ 46, 2015-Ohio-492, 29 N.E.3d 939, citing *State v. Comen*, 50 Ohio St.3d 206, 553 N.E.2d 640 (1990), paragraph two of the syllabus. A jury instruction is required to present a correct, pertinent statement of the law that is appropriate to the facts. *White* at *id.*, citing *State v. Griffin*, 141 Ohio St.3d 392, 2014-Ohio-4767, 24 N.E.3d 1147, ¶ 5. "The relevant principle for jury instructions is not one of abstract correctness, but is whether an

instruction — even if a correct statement of law — is potentially misleading." *White* at 291.

**{¶48}** In this case, the trial court's instruction on the repeat violent offender specifications contained incorrect, misleading, and conflicting statements of law and potentially misled the jury into considering whether Banks's 2010 burglary conviction related to his current cases.

**{¶49}** The dissent contends that this court does not have the authority to raise this issue without affording the state the opportunity to address the issue and cites *State v. Tate*, 140 Ohio St.3d 442, 2014-Ohio-3667, 19 N.E.3d 888, as authority. In *Tate*, the Ohio Supreme Court held that "appellate courts should not decide cases on the basis of a new, unbriefed issue without 'giv[ing] the parties notice of its intention and an opportunity to brief the issue.'" *Id*. at ¶ 21 quoting *State v. 1981 Dodge Ram Van*, 36 Ohio St.3d 168, 170, 522 N.E.2d 524 (1988). The issue in *Tate* was that this court had decided the case on an issue, the identity of the perpetrator, that neither party had raised. This case, however, is distinguishable. The trial court's erroneous jury instructions are not our sole or even main reason for reversal; the trial court's submission of the repeat violent offender specification to the jury is our basis for reversal. The erroneous jury instructions are an ancillary issue we raise as further support for our decision.

**{¶50}** In sum, the trial court erred when it submitted the repeat violent offender specification to the jury. Moreover, we cannot say that the information that was placed into evidence surrounding Banks's 2010 burglary conviction was not used to convict him

of the charges, especially since the trial court pointedly stated the jury could look to the 2010 burglary conviction when considering the current offenses. Finally, even though it is not necessary to find prejudice, we do find that Banks was prejudiced when the court submitted the repeat violent offender specification to the jury and then, after conviction, sentenced him to an additional five years on the specification.

**{¶51}** The court's error constitutes reversible error. Therefore, Banks's convictions in C.P. Nos. CR-14-582703-B, CR-14-583146-A, and CR-14-502808-A must be vacated and are remanded for a new trial.

## IV. Ineffective Assistance of Counsel

**{¶52}** In the first and fourth assignments of error, Banks claims that he received ineffective assistance of counsel because his counsel did not ask the court to sever the repeat violent offender specification or for a trial separate from his codefendant.

**{¶53}** The Sixth Amendment to the United States Constitution guarantees a criminal defendant the effective assistance of counsel. *McMann v. D.R.*, 397 U.S. 759, 771, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970). Courts employ a two-step process to determine whether the right to effective assistance of counsel has been violated. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing

that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. *Id.*

**{¶54}** An attorney properly licensed in the state of Ohio is presumed competent. *State v. Lott*, 51 Ohio St.3d 160, 174, 555 N.E.2d 293 (1990). The defendant has the burden of proof and must overcome the strong presumption that counsel's performance was adequate or that counsel's action might be sound trial strategy. *State v. Smith*, 17 Ohio St.3d 98, 100, 477 N.E.2d 1128 (1985). In demonstrating prejudice, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different. *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraph three of the syllabus.

**{¶55}** Despite this high burden, we find that Banks did receive ineffective assistance of counsel. Although we recognize that counsel may pursue a reasonable trial strategy, nothing that defense counsel did during Banks's trial constituted a reasonable strategy and ultimately denied him a fair trial.

**{¶56}** After reviewing the record, counsel's decision not to have a bench trial on the repeat violent offender specifications was not based on any reasonable trial strategy. The trial court questioned defense counsel's "strategy" and Banks himself told the court that he did not want his prior conviction to enter into evidence. But defense counsel insisted that he did not want to bifurcate the specification and apparently convinced Banks of the same. Throughout trial, however, defense counsel failed to pursue any trial strategy that supported his decision.

{¶57} Although, as noted under the previous assignments of error, it was incumbent upon the court to bifurcate the specification, it was defense counsel who initially raised the issue and insisted on its inclusion in trial. There was no reason to allow into evidence information regarding Banks's prior conviction because Banks had previously stipulated to the conviction and did not testify in his own defense; therefore, the prior conviction could not have been used to impeach him. Thus, based upon the facts of this case, Banks has overcome the presumption that his counsel's failures were the product of a sound trial strategy. *Strickland*, *supra*.

{¶58} In his fourth assignment of error, Banks claims that he also received ineffective assistance of counsel because counsel failed to oppose joinder of his trial with Sutton's trial. Upon review of the record, we find that this decision does not rise to the level required to demonstrate Banks received ineffective assistance of counsel.

{¶59} The first assignment of error is sustained. The fourth assignment of error is overruled.

## V. Joinder

### a. Trial Court's Joinder of Offenses was Proper

{¶60} Banks argues in this third assignment of error that the trial court erred when it denied his motion for a separate trial on each case. Under Crim.R. 8(A), which governs the joinder of offenses, two or more offenses may be charged together if the offenses "are of the same or similar character, * * * or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or are

part of a course of criminal conduct." Similarly, Crim.R. 13 provides that a trial court may order two or more indictments or informations, or both, to be tried together, "if the offenses or the defendants could have been joined in a single indictment or information."

{¶61} Ohio law favors joining multiple offenses in a single trial if the requirements of Crim.R. 8(A) are satisfied. *State v. Williams*, 73 Ohio St.3d 153, 158, 652 N.E.2d 721 (1995); *State v. Ferrell*, 8th Dist. Cuyahoga No. 100659, 2014-Ohio-4377, ¶ 38. If it appears, however, that the defendant would be prejudiced by the joinder, the trial court may grant the severance. Crim.R. 14; *State v. Diar*, 120 Ohio St.3d 460, 2008-Ohio-6266, 900 N.E.2d 565, ¶ 95. The defendant bears the burden of proving prejudice. *State v. Brinkley*, 105 Ohio St.3d 231, 2005-Ohio-1507, 824 N.E.2d 959, ¶ 29.

{¶62} The state may rebut a defendant's claim of prejudicial joinder in two ways: (1) by showing that, if in separate trials, the state could introduce evidence of the joined offenses as "other acts" under Evid.R. 404(B), which is known as the "other acts" test; or (2) by showing that the evidence of each crime joined at trial is simple and direct, which is known as the "joinder test." *State v. Lott*, 51 Ohio St.3d 160, 163, 555 N.E.2d 293 (1990). If the state can meet the requirements of the "joinder test," it need not meet the requirements of the stricter "other acts" test. *State v. Franklin*, 62 Ohio St.3d 118, 122, 580 N.E.2d 1 (1991). A defendant is therefore not prejudiced by joinder when simple and direct evidence exists, regardless of the admissibility of evidence of other crimes under Evid.R. 404(B). *Id.*

**{¶63}** A trier of fact is also considered "capable of segregating the proof on multiple charges when the evidence as to each of the charges is uncomplicated." *State v. Lunder*, 8th Dist. Cuyahoga No. 101223, 2014-Ohio-5341, ¶ 33, citing *State v. Torres*, 66 Ohio St.2d 340, 343-344, 421 N.E.2d 1288 (1981). Joinder is therefore not prejudicial when the evidence is direct and uncomplicated and can reasonably be separated as to each offense. *Id.*, citing *id.*

**{¶64}** This court reviews a trial court's decision on joinder for an abuse of discretion. *State v. Grimes*, 8th Dist. Cuyahoga No. 94827, 2011-Ohio-4406, ¶ 15, citing *State v. Segines*, 8th Dist. Cuyahoga No. 89915, 2008-Ohio-2041.

**{¶65}** As this court noted in Banks's codefendant's case, *Sutton*, 8th Dist. Cuyahoga Nos. 102300 and 102302, 2015-Ohio-4074:

> In this instance, the incidents charged in the two indictments were connected temporally and factually as described above. Furthermore, the evidence presented by the state with regard to each offense was simple and direct. There is no indication in the record that the jury confused the evidence as to the different counts or that the jury was influenced by the cumulative effect of the joinder. In fact, the jury's not guilty verdicts on several of the charges demonstrated the jury's ability to apply the evidence separately to each offense. *State v. Peterson*, 8th Dist. Cuyahoga Nos. 100897 and 100899, 2015-Ohio-1013, ¶ 69. Joinder was, therefore, not prejudicial.

*Id.* at ¶ 25.

**{¶66}** We are aware, of course, that we are reviewing Banks's cases and his arguments must be considered individually from Sutton's appeal. He was also charged in two additional cases. But, like Sutton, the incidents charged in C.P. Nos. CR-14-582703-B and CR-14-582808-A were connected temporally and factually. C.P.

Nos. CR-14-582703-B and CR-14-583146-A occurred months apart from the other two crimes, but, under Crim.R. 8(A), offenses that are "of the same or similar character" may be joined. *See State v. Coleman*, 1st Dist. Hamilton No. C-900872, 1992 Ohio App. LEXIS 1046 (Mar. 11, 1992). In this case, both crimes involved home invasions. There is no indication in the record that the jury was confused about the evidence as to the different counts or cases or that the jury was influenced by the cumulative effect of the joinder.

{¶67} The trial court instructed the jury to consider each charge separately:

> Ladies and gentlemen, each of the counts in these indictments are separate and distinct items. You are to consider each count uninfluenced by your verdict in any other count. You may find these defendants guilty or not guilty of any one or more combination of all the charges in this case, and it is up to you to determine each count relative to each defendant separately from everything else.

{¶68} A jury is presumed to follow the instructions of the trial court. *State v. Loza*, 71 Ohio St.3d 61, 79, 641 N.E.2d 1082 (1994). Similar to Sutton, Banks was not convicted of the indictment in all four cases; he was acquitted of some charges and convicted of a lesser offense in others. Therefore, Banks is unable to show that he was prejudiced by the court's refusal to sever his offenses. The third assignment of error is overruled.

## VI. No Error in Refusing to Allow Banks to Proceed Pro Se

{¶69} In the fifth assignment of error, Banks argues that the trial court erred when it failed to allow Banks to proceed pro se.

**{¶70}** The Sixth Amendment to the United States Constitution provides that defendants shall have the right to have the assistance of counsel for their defense. While a defendant has a right to counsel, the defendant may also waive that right when the waiver is voluntary, knowing, and intelligent. *State v. Gibson*, 45 Ohio St.2d 366, 345 N.E.2d 399 (1976), citing *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).

**{¶71}** To discharge a court-appointed attorney, a defendant must show a breakdown in the attorney-client relationship of such a magnitude as to jeopardize a defendant's rights to effective assistance of counsel. *State v. Coleman*, 37 Ohio St.3d 286, 292, 525 N.E.2d 792 (1988). The defendant bears the burden of presenting the grounds for disqualifying appointed counsel. *State v. Hawkins*, 8th Dist. Cuyahoga No. 91930, 2009-Ohio-4368, ¶ 52. If defendant alleges facts sufficient for relief, then the trial court must inquire into the claim. *State v. King*, 104 Ohio App.3d 434, 437, 662 N.E.2d 389 (4th Dist.1995). The assertion of the right to self-representation must be clear and unequivocal. *State v. Dean*, 127 Ohio St.3d 140, 2010-Ohio-5070, 937 N.E.2d 97, ¶ 68.

**{¶72}** The attorney that represented Banks at trial was his third attorney. He was appointed on May 29, 2014, and attended a pretrial on June 24, 2014. Banks filed a written "Notice of Termination of Representation" on July 29, 2014, before the next pretrial. In his "Notice," Banks stated that his reason for termination is that he gave

informed consent to such termination.   Importantly, Banks also stated that his notice was not to be construed as a motion that the court should act on.

{¶73} Banks's stated reason for his notice is located in Ohio Prof. Cond. Rule 1.16(b)(7), which states that "a lawyer may withdraw from the representation of a client if * * * the client gives *informed consent* to termination of the representation." (Emphasis sic).   Here, Banks did not allege that there was a breakdown in the attorney-client relationship.   He did not meet his burden by presenting any grounds for disqualifying appointed counsel and did not allege facts sufficient for relief; he failed to allege any facts.   Therefore, the trial court was not required to inquire into his claim.

{¶74} In light of these facts, we find that the trial court did not err when it did not inquire into Banks's Notice of Termination of Representation prior to trial.

{¶75} The fifth assignment of error is overruled.

## VII.   Conclusion

{¶76} It is the trial court who "shall" determine whether an offender is a repeat violent offender.   R.C. 2941.149(B).   Thus, it is error for a trial court to submit the issue to a jury.   In this case, because the trial court submitted the repeat violent offender specifications determination to the jury, and moreover incorrectly instructed the jury on the specifications, and because those errors permeated the entire trial, Banks's convictions in C.P. Nos. CR-14-582703-B, CR-14-583146-A, and CR-14-502808-A are hereby reversed and remanded for a new trial.

**{¶77}** Judgment affirmed in C.P. No. CR-14-581555-A and reversed in C.P. Nos. CR-14-582703-B, CR-14-583146-A, and CR-14-582808-A. Cases are remanded to the trial court for further proceedings consistent with this opinion.

It is ordered that appellant and appellee split the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

LARRY A. JONES, SR., PRESIDING JUDGE

ANITA LASTER MAYS, J., CONCURS;
SEAN C. GALLAGHER, J., DISSENTS
WITH SEPARATE OPINION

SEAN C. GALLAGHER, J., DISSENTING:

**{¶78}** I respectfully dissent from the majority's determination that reversible error occurred because the repeat violent offender specification was submitted to the jury instead of the trial court pursuant to a plain reading of R.C. 2941.149(B), and because of the majority's sua sponte determination that an erroneous jury instruction was provided. On the latter issue, appellate courts cannot sua sponte assign error without affording the state the opportunity to address the issue. *State v. Tate*, 140 Ohio St.3d 442,

2014-Ohio-3667, 19 N.E.3d 888, ¶ 21. The defendant forfeited his right to challenge the jury instructions by not objecting at the trial court level, and by failing to assign any error to the same on appeal.

{¶79} Further, the majority merely concludes that an error occurred because R.C. 2941.149(B) provides that the trial court shall determine the repeat violent offender specification. Finding that an error occurred does not end the inquiry. The majority's conclusion directly conflicts with *State v. Hines*, 8th Dist. Cuyahoga No. 90125, 2008-Ohio-4236, ¶ 35, in which a panel from this district concluded that no reversible error occurred because the defendant failed to demonstrate prejudice.

{¶80} Banks's trial counsel specifically asked to have the jury determine the repeat violent offender specification in light of the fact that Banks was not seeking to bifurcate the charge of having a weapon under disability. Thus, the issue on appeal is whether this invited error constituted ineffective assistance of counsel. As the majority noted, Banks essentially combined both assigned errors dealing with the repeat violent offender specification into one claim for ineffective assistance of counsel. The majority then concludes that trial counsel's decision to not bifurcate the trial was error without addressing whether Banks demonstrated prejudice.

{¶81} It is settled law that in order to substantiate a claim of ineffective assistance of counsel, the appellant must show that (1) counsel's performance was deficient, and (2) the deficient performance prejudiced the defendant so as to deprive him of a fair trial. *State v. Trimble*, 122 Ohio St.3d 297, 2009-Ohio-2961, 911 N.E.2d 242, ¶ 98, citing

*Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The majority's analysis skips the second step altogether and merely concludes that the performance of Banks's counsel was deficient because that statute did not permit what counsel sought and was given at trial. Banks has not demonstrated, let alone even argued on appeal, that the deficient performance deprived him of a fair trial, especially considering the fact that the jury heard about Banks's prior convictions for the having a weapon while under disability count. The defendant has the burden of proving his counsel rendered ineffective assistance. *State v. Perez*, 124 Ohio St.3d 122, 2009-Ohio-6179, 920 N.E.2d 104, ¶ 223.

{¶82} In addition, Banks invited any error by agreeing, on the record, with his trial counsel's decision to have all issues resolved by the jury. For these reasons, I would affirm the conviction.