[Cite as *State v. Wright*, 2018-Ohio-122.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio

      Appellee

v.

Willie Lee Wright, Jr.

      Appellant

Court of Appeals No. L-17-1006
                          L-17-1007

Trial Court No.     CR0201602694
                          CR0201602287

**DECISION AND JUDGMENT**

Decided: January 12, 2018

* * * * *

Julia R. Bates, Prosecuting Attorney, and Claudia A. Ford, Assistant
Prosecuting Attorney, for appellee.

Laurel A. Kendall, for appellant.

* * * * *

**OSOWIK, J.**

{¶ 1} This is a consolidated appeal[1] from two judgments of the Lucas County

Court of Common Pleas which, following a jury trial, found appellant guilty of two

---

[1] This court sua sponte consolidated appeal Nos. L-17-1006 and L-17-1007. *See State v. Wright*, 6th Dist. Lucas Nos. L-17-1006 and L-17-1007 (Jan. 24, 2017).

felony domestic violence occurrences and sentenced him to a total prison term of 36 months. For the reasons set forth below, this court affirms the judgments of the trial court.

{¶ 2} Following a jury trial, appellant Willie L. Wright, Jr. was convicted of domestic violence against his live-in girlfriend at the time, the victim, for two incidents, each a violation of R.C. 2919.25(A) and (D)(4), a felony of the third degree. Count 2 occurred on November 16, 2015, and Count 3 occurred on June 16, 2016. Appellant was found not guilty of domestic violence alleged to have occurred on March 8, 2015 (Count 1). The counts originated from three separate indictments and three separate cases in Lucas County Common Pleas Court. The jury verdicts for each of the three counts were journalized on December 9, 2016.

{¶ 3} Following appellant's two convictions, on December 29, 2016, the trial court sentenced appellant to serve consecutive 18-month prison terms for each conviction for a total of 36 months. It is from the trial court's January 2, 2017 journalized sentencing judgment entry in case No. CR2016-02694 (Count 2) which appellant filed his appeal on January 4, 2017 (assigned appeal No. L-17-1006). It is also from the trial court's January 2, 2017 journalized sentencing judgment entry in case No. CR2016-02287 (Count 3) which appellant filed his appeal on January 4, 2017 (assigned appeal No. L-17-1007). This court then consolidated both appeals on January 24, 2017.

{¶ 4} Appellant sets forth three assignments of error:

I. The trial court erred to the prejudice of Appellant when it granted Appellee's motion for joinder of offenses, when Appellant was indicted separately

2.

on all charges, and no similarity of violent acts was proven at trial, as was proffered by the state during oral argument on the motion to join held on the day of trial.

II.  Appellant's conviction for domestic violence as to the second incident was against the manifest weight of the evidence.

III.  Appellant was denied effective assistance of trial counsel as guaranteed by Article I, Section 10 of the Ohio Constitution and the Sixth and Fourteenth Amendments to the United States Constitution when his trial counsel failed to call his prior trial counsel as a witness to contradict the victim's testimony as to the second (November 16, 2015) incident.

## I.  Improper Joinder

{¶ 5} In support of his first assignment of error, appellant argues the trial court abused its discretion by granting appellee's motion to join the three pending cases of domestic violence.  As evidence of such abuse, appellant points to appellee's "on again-off again approach wherein charges were brought, dropped, and brought again" as presumptive evidence appellee did not have strong enough evidence for the three charges to stand alone on their merits and appellee "needed all three together to prove their case." Appellant urges this court to find appellee's pattern of indictments "suggest an attempt by the state to accumulate evidence against the appellant by pursuing all three cases simultaneously, even if not joined into one case * * * to buttress the appearance of a pattern of behavior that may not stand up to scrutiny on its own."  Appellant argues "the cumulative effect to the jury of hearing about three separate incidents of alleged domestic

3.

violence against one victim" is the reason appellee secured two convictions because "consolidation [helped] overcome the [prosecution's] shortcomings in one case by the cumulative allegations from all three cases." Appellant urges us to accept the jury was confused by focusing their attention on the fact there were three allegations of domestic violence instead of focusing on each charge and making sure the prosecution proved all elements of each charge.

{¶ 6} To evidence the prejudice to him, appellant asserts two claims. First, the absence of a "record of the state trying to join the charges into one case with multiple offenses" or "to amend indictments, or to consolidate the case into one indictment with multiple charges." Second, since he was found not guilty of Count 1, there can be "no similarity of violent acts" with -- or between -- the other two counts. Appellant further argues his acquittal on Count 1 meant appellee had insufficient evidence to use for the other offenses, had they been severed for trial purposes.

{¶ 7} Appellee responds the trial court did not abuse its discretion and prejudice appellant by joining the three cases at trial. Appellee argues that appellant failed to meet his burden to show reversible error because he: 1) admitted joinder at trial was proper under Crim.R. 13; 2) failed to accurately point to any portion of the trial record evidence and law as required by App.R. 16(A)(7); 3) failed to renew his objection to joinder at the close of the state's case or at the conclusion of all the evidence; 4) failed to prove evidence of plain error or a manifest miscarriage of justice; and 5) joinder was proper under Crim.R. 8(A) where each of the three cases was of the same or similar nature, domestic violence, by the same defendant against the same victim.

4.

{¶ 8} Joinder is favored in the law and is to be liberally permitted. *State v. Rojas*, 6th Dist. Lucas No. L-11-1276, 2013-Ohio-1835, ¶ 34.

{¶ 9} A court may order two or more separate indictments or complaints to be tried together if the offenses could have been joined in a single indictment or information or in a single complaint. Crim.R. 13. In either case, the trial shall proceed as if the prosecution were under a single indictment, information or complaint. *Id.*

{¶ 10} Joinder of two or more separate offenses in an indictment, information or complaint is proper "if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character, or are based on the same act or transaction, or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or are part of a course of criminal conduct." Crim.R. 8(A).

{¶ 11} If a party is prejudiced by joinder of the offenses or by joinder for trial of the indictments, informations or complaints, the court shall order an election for separate trial of the counts and other relief as justice requires. Crim.R. 14.

{¶ 12} Following a hearing held immediately prior to the commencement of the jury trial on December 6, 2016, the trial court granted appellee's motion to join the three counts into the single jury trial to commence that day pursuant to Crim.R. 8(A) and 13. Appellee argued joinder was proper because all three domestic violence occurrences involved: a) the same victim, b) the same defendant, c) were only fifteen months apart in time, and d) involved similar investigation methods and witnesses.

{¶ 13} Appellant opposed joinder pursuant to Crim.R. 14. Appellant and his attorney were present for the December 6, 2016 hearing to oppose appellee's joinder

5.

motion.  The record shows, however, that appellant never made a motion to sever following the trial court's joinder decision.  Any opposition to joinder, or a motion to sever, by appellant made at the outset of a trial must be renewed at the close of the state's case or at the conclusion of all of the evidence so that a Crim.R.14 analysis may be conducted in light of all the evidence presented at trial.  *Rojas*, 6th Dist. Lucas No. L-11-1276, 2013-Ohio-1835, at ¶ 34.  Failure to do so results in a waiver of the issue of severance of the joinder on appeal. *Id.*  The record shows appellant failed to do so, and the issue is waived, despite appellant's efforts to merely label that failure as harmless error.

{¶ 14} Even if appellant had not waived the issue on appeal, joinder was still proper.  Appellant concedes "this court will likely find that the trial court could have ordered the three cases here to be tried together" because they involved "the same victim, and the alleged violation of the same code section."  Appellee satisfies the requirements of Crim.R. 13 because the offenses could have been joined in a single indictment.  *See State v. Gibson*, 6th Dist. Lucas Nos. L-13-1222, L-13-1223, 2015-Ohio-1679, ¶ 24.

{¶ 15} Even if appellant did not concede joinder was proper under Crim.R. 13, he has the burden to show prejudice from joinder with sufficient information for the trial court to weigh the right to a fair trial against the benefits of joinder and that, despite that information, the trial court abused its discretion refusing to sever the charges for trial.  *Id.* at ¶ 25-26.

{¶ 16} We find appellant's two proffers of evidence of prejudice to him are insufficient.  First, contrary to appellant's assertion, Crim.R. 13 does not require appellee

6.

to first consolidate appellant's three cases into one indictment with multiple charges under Crim.R. 8(A). *See* CrimR. 13. Rather, appellant has the burden to prove – not merely to speculate -- he was prejudiced by joinder of offenses for trial. Crim.R. 14. Second, appellant's acquittal of Count 1 strongly suggests he was not prejudiced by joinder of Counts 1, 2 and 3. *State v. Banks*, 2015-Ohio-5413, 56 N.E.3d 289, ¶ 68 (8th Dist.); *State v. Lee*, 8th Dist. Cuyahoga No. 104682, 2017-Ohio-1449, ¶ 19. Moreover, there is no indication from appellant that he would have defended Counts 2 and 3 any differently if the charges had not been joined. *State v. Johnson*, 88 Ohio St.3d 95, 110, 723 N.E.2d 1054 (2000).

{¶ 17} Because joinder of indictments for a single trial is within the discretion of the trial court, we find an abuse of discretion only where "the trial court's attitude in reaching its decision was unreasonable, arbitrary, or unconscionable." *Gibson* at ¶ 25. Even if we found appellant demonstrated prejudice, we do not find the trial court abused its discretion in granting appellee's motion to join at trial Counts 1, 2 and 3. *State v. Heflin*, 6th Dist. Lucas No. L-10-1268, 2011-Ohio-4134, ¶ 14.

{¶ 18} Appellant's first assignment of error is not well-taken.

## II. Manifest Weight of the Evidence

{¶ 19} In support of his second assignment of error, appellant focuses solely on Count 2. Appellant argues that "without corroboration of any visible injury to the victim within minutes of the victim's call to the police, together with the uncontested testimony that appellant did not threaten or injure the victim with the knife that was in his hand when the police arrived, and for which both the victim and the appellant offered a

7.

routine, non-violent explanation that was consistent with the totality of the circumstances surrounding appellant's [nude and knife wielding] appearance at the scene, that appellant's conviction for domestic violence was against the manifest weight of the evidence because appellant did not knowingly cause or attempt to cause physical harm to a family or household member * * *."

{¶ 20} Appellee argues in response the jury conviction for Count 2 was supported by the manifest weight of the evidence. The victim testified appellant struck her in the forehead with his open hand, threatened to kill her, and while on the phone with her daughter, asked her daughter to call the police. The victim's daughter testified she listened over the open phone line with her mother that appellant threatened he would hit the victim with a hammer and cut her and kill her and called the police at her mother's request. The victim's daughter called the police. Both responding police officers testified the victim was upset and crying and told at least one of them appellant struck her. Appellee further argues that corroborating evidence of visible injury for Count 2 is not an essential element of appellee's burden for a violation of R.C. 2919.25(A) and (D)(4).

{¶ 21} "A challenge to the weight of the evidence questions whether the greater amount of credible evidence was admitted to support the judgment than not." *Flowers v. Siefer*, 6th Dist. Lucas No. L-16-1002, 2017-Ohio-1310, ¶ 94. This court has repeatedly stated that in determining whether a verdict is against the manifest weight of the evidence, we review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether the trier of fact clearly

8.

lost its way to create such a manifest miscarriage of justice as to require a new trial. *State v. Reynolds*, 6th Dist. Lucas No. L-16-1021, 2017-Ohio-1478, ¶ 47. A conviction will be overturned only in exceptional cases. *Id.* Every "reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts." *Flowers* at ¶ 94.

{¶ 22} It is well established that the jury, as the trier of fact, has the sole duty to decide what weight should be given to the testimony of any witness. *Kokitka v. Ford Motor Co.*, 73 Ohio St.3d 89, 92, 652 N.E.2d 671 (1995); *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. We will not reverse those decisions absent an abuse of discretion where the record shows the decision was unreasonable, arbitrary or unconscionable. *Flowers* at ¶ 59; *Kinn v. HCR ManorCare*, 2013-Ohio-4086, 998 N.E.2d 852, ¶ 14 (6th Dist.).

{¶ 23} In the first instance of the Count 2 indictment, the domestic violence statute reads, "No person shall knowingly cause or attempt to cause physical harm to a family member or household member." R.C. 2919.25(A). In the second instance of the Count 2 indictment the domestic violence statute continues: if the offender has previously plead guilty to or convicted of two or more domestic violence offenses, the offense shall be a felony in the third degree. R.C. 2919.25(D)(4). "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. * * * When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person

9.

subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact." R.C. 2901.22(B).

{¶ 24} We reviewed the entire record with respect to Count 2 and find there was clearly enough evidence for the jury to reach its decision.

{¶ 25} Appellant testified at the trial and admitted to making physical contact with the victim during the Count 2 incident.

> Q: So you do agree to putting your hands on her head but you deny that that [sic] was an aggressive act?
>
> A: Right, right, correct.

{¶ 26} Appellant also admitted at trial he had "prior domestic violences" but they were just "verbal." The record contains evidence of two prior domestic violence convictions from Toledo Municipal Court, which satisfied the requirements for felony domestic violence in the third degree. R.C. 2919.25(D)(4).

{¶ 27} The record included at least one telephone call by appellant to the victim from the jail where he discussed his attitude towards roughing up a woman.

> Q: It's not that you said you would never rough up a woman, it's that you said you'd never roughed them up so bad that they still couldn't go out and work for you. That's a big difference.
>
> A: Right, but you know how people – you know how people, you know, how people talk.

{¶ 28} Both responding police officers testified the victim opened the front door, where they found her visibly upset, shaken and crying. Both responding police officers

10.

testified appellant stood a few feet behind the victim naked and holding a knife. The responding police officers then separated appellant and victim.

{¶ 29} Appellant told one responding police officer he was naked because he had just taken a shower and was holding a knife because he did not know who was at the door. The police officer testified appellant never mentioned using the knife for his foot callouses after a shower.

{¶ 30} The victim told the other responding police officer appellant hit her on her head with his open hand and threatened to get a hammer and knife to hurt her, including stabbing her five or six times and then walk away. The victim testified she then called her daughter because she was so distraught and eventually to ask her to call the police. Although the victim didn't recall at trial appellant's hit to her forehead "stinging," the victim did acknowledge her memory was best at the time she made her statements to the responding police officers.

{¶ 31} The victim's daughter testified the victim called her upset and crying. The daughter heard appellant's voice over the phone threatening the victim with physical harm with both a hammer and a knife. The daughter immediately called the police to report for her mother.

{¶ 32} We do not find the jury clearly lost its way to create such a manifest miscarriage of justice as to require a new trial for Count 2.

{¶ 33} Appellant's second assignment of error is not well-taken.

11.

### III. Ineffective Assistance of Counsel

{¶ 34} In support of his third assignment of error, appellant again focuses solely on Count 2. Appellant argues his second trial counsel erred by not calling his first trial counsel as a witness to impeach the inconsistent statements of the victim regarding her alleged initial discussions with the first trial counsel. Because the first trial counsel was not called as a defense witness, appellant argues "his testimony as to the [sic] what the victim said or didn't say was never heard by the jury." That testimony "could have created doubt in the mind of at least one juror as to the victim's veracity as to her statements concerning all three of the incidents" and "could have changed the result of the trial, at least as to the specific incident to which the attorney could testify." The result is the "failure to call a witness who could have impeached the credibility of the victim is an error which is 'so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'"

{¶ 35} Appellee argues in response that appellant was not denied effective assistance of counsel because the decision to call a witness to testify constitutes trial strategy, which will not be second guessed on appeal without a specific showing of specific prejudice. Appellee argues appellant fails to show any specific prejudice because he does not show that but for his second trial counsel's error in not calling his first trial counsel as a "presumptively exculpatory witness," the result of the trial would have been different. Rather, appellant relies on speculation that the jury might not have convicted him of Count 2. Speculation is insufficient to demonstrate the result of the

12.

absence of the first trial counsel as witness sufficiently undermined confidence in the jury conviction for Count 2.

{¶ 36} An ineffective assistance of counsel claim must overcome the strong presumption that a properly licensed Ohio lawyer is competent. *State v. Roberson*, 6th Dist. Lucas No. L-16-1131, 2017-Ohio-4339, ¶ 95. The record does not show appellant questions the licensure of his second trial counsel, so his competence is presumed.

{¶ 37} To overcome this presumption of competence, appellant has the burden in an ineffective assistance of counsel claim to show both deficient performance by his second trial counsel below an objective standard of reasonable representation and a reasonable probability of prejudice that but for his second trial counsel's errors, the jury could not have convicted him of Count 2. *Id.*

{¶ 38} Our review of the entire record reveals the trial strategy employed by appellant's second trial counsel with respect to whether or not to call appellant's first trial counsel as a witness. On cross-examination the victim explained her prior interactions with appellant's first trial counsel were limited.

> A: I told him I wasn't talking to him. If he got a thing, a recording, you would hear me tell him I'm not talking to you. * * * This last time when he called is when I told him that I wasn't going to because – because I wasn't going to change my mind. I said I wasn't going to change my mind. * * *

13.

Q: If [the first trial counsel] said that you told him that sometimes you call the police to get Willie out of the house, he's arguing this and that, that wouldn't be true?

A: That wouldn't be true because that's not what I told him. I told him I wasn't going to talk to him.

Q: And so you never did talk to that attorney?

A: Not that – I mean I had talked to him another time but –

Q: Let's talk about that time. The other time?

A: Okay. But I didn't talk to him twice. I talked to him once before. I don't remember what we said, but this last time when I talked to him when he called I told him I'm not talking to you. And then he said you're not going to talk? And I said no and we hung up. That was it.

{¶ 39} After the appellant took the witness stand in his own defense with extensive explanations for his conduct for the three indictments, the evidence was closed and ready for closing arguments and jury deliberations. The following morning, prior to closing arguments appellant moved to reopen the evidence to provide additional testimony by appellant, and "[h]e would also like an additional witness which I [his second trial counsel] have decided not to call in this case to be called."

Court: What's that witness's name?

Attorney: That would be attorney Eric Marks.

Court: Okay. And –

Attorney: And the reason I declined to call Mr. Marks is what he was going to testify to was discussed in court through other witnesses. So at that point I had decided not to call that witness, but Mr. Wright asked me to make this motion to reopen the evidence so that these matters could be addressed.

Court: My recollection is that yesterday the defendant testified fully with regards to his views. One of the last questions asked by his counsel was whether there was anything else he wished to testify to. At that time he said he didn't. So I'm going to find that the motion to reopen the evidence is found not well-taken, be ordered denied.

{¶ 40} "Debatable trial tactics generally do not constitute a deprivation of effective counsel." *State v. Phillips*, 74 Ohio St.3d 72, 85, 656 N.E.2d 643 (1995). Appellant's second trial counsel's explanation for not calling appellant's first trial counsel was reasonable at the time he made that decision. *Id.* We find that the record shows no errors by appellant's second trial counsel so serious as to deprive appellant of a fair trial and to render the jury conviction for Count 2 unreliable. *Id.* at 84. The record reflects ample evidence presented to the jury with which to assess the credibility of the victim's testimony. Impeaching the victim's credibility was the sole stated purpose of calling appellant's first trial counsel. The record is devoid of any indication what the testimony by appellant's first trial counsel would be that could be deemed "presumptively exculpatory" for the Count 2 jury conviction. There was already in the record cross-examination of the victim with respect to the claim that she told appellant's first trial

15.

counsel she sometimes calls the police to get the appellant out of the house. As the potential testimony by appellant's first trial counsel does not have direct bearing on an essential element of the Count 2 jury conviction for felony domestic violence, we do not find that appellant's second trial counsel provided him ineffective assistance of counsel.

{¶ 41} Appellant's third assignment of error is not well-taken.

{¶ 42} On consideration whereof, we find that substantial justice has been done in this matter and the judgments of the Lucas County Court of Common Pleas are affirmed. Appellant is ordered to pay costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Arlene Singer, J.              _____
                                             JUDGE
Thomas J. Osowik, J.         

Christine E. Mayle, P.J.        _____
CONCUR.                                         JUDGE

_____
                                           JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.