[Cite as *State v. Lee*, 2017-Ohio-1449.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
No. 104682

---

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## RAMEL J. LEE

DEFENDANT-APPELLANT

---

**JUDGMENT:**
AFFIRMED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-16-604198-A

**BEFORE:** Blackmon, P.J., Celebrezze, J., and Jones, J.

**RELEASED AND JOURNALIZED:** April 20, 2017

**ATTORNEY FOR APPELLANT**

P. Andrew Baker
11510 Buckeye Road
Cleveland, Ohio 44104


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor
By:    Daniel A. Cleary
Assistant County Prosecutor
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

PATRICIA A. BLACKMON, P.J.:

**{¶1}** Appellant Ramel J. Lee ("Lee") appeals his convictions for murder, attempted murder, felonious assault, and discharging a firearm near prohibited premises. He assigns the following errors for our review:

I.    The trial court erred when it denied [Lee's] motion for severance.

II.   The trial court erred when it improperly removed a juror.

III.  The trial court erred when it refused to give a self-defense instruction.

IV.   The trial court erred in convicting [Lee] when the conviction was against the manifest weight of the evidence.

V.    The trial court erred in convicting [Lee] when there was prosecutorial misconduct.

VI.   The trial court erred when it improperly sustained the prosecutor's objection to defense counsel's closing argument.

VII.  The trial court erred when it violated [Lee's] right to be present at all critical stages of the trial when it answered jury questions.

**{¶2}** Having reviewed the record and the pertinent law, we affirm the trial court's decision.

**{¶3}** On March 16, 2016, Lee was indicted in a 13-count indictment in connection with two shootings. Counts 1-7 pertained to the February 21, 2012 armed attack on Charles Elder ("Elder") and T.T. (a minor), and resulted in the death of T.T.[1] As is relevant herein, Counts 8-13 pertained to the April 15, 2013 shooting of Elder and fatal

---

[1]Lee was ultimately acquitted of all of the charges pertaining to the February 21, 2012 shooting.

shooting of Regina Neal ("Neal"). In connection with this shooting, Lee was charged with aggravated murder, murder, attempted murder, three counts of felonious assault, and discharging a firearm near prohibited premises, all with one-year and three-year firearm specifications and criminal gang activity specifications. Lee pled not guilty and filed a motion to sever the charges pertaining to the February 21, 2012 shooting from the charges pertaining to the April 15, 2013 shooting. The trial court denied the motion and the matter proceeded to trial on May 16, 2016. Lee waived his right to a jury trial with respect to the gang activity specifications, and the remaining charges were tried to a jury.

{¶4} The evidence demonstrated that Lee is a member of the J-Park gang that operates in the area of East 131st Street and Harvard Avenue in Cleveland. A rival gang, ATM Jack Boyz, operates in the area of East 131st Street and Caine Avenue in Cleveland near Garfield Heights. The evidence also established that it is generally considered unsafe for members of a gang to go into the territory of a rival gang because a fight or shootout could result.

{¶5} Elder testified regarding the events of both shootings. Elder denied being a member of any gang, but he stated that he was friends with all of the ATM Jack Boyz gang members, including T.T. With regard to the February 21, 2012 shooting, Elder testified that after T.T. had two separate altercations with the girlfriend of a J-Park gang member, Elder and T.T. were fired on while walking in the area of East 131st Street and South Parkway. T.T. was shot in the back of the head and died. Elder fled and was not

hit. Elder spoke with Garfield Heights police officers after the shooting but he indicated that he did not see his assailants.

{¶6} With regard to the April 15, 2013 shooting, Elder testified that immediately prior to this shooting, he and Neal were walking near Neal's home on East 134th Street near Caine Avenue when they were attacked by armed assailants. Neal was shot in the head and killed, and Elder was struck in the leg and survived. Elder observed one of his assailants about five houses away on the west side of the street. He told police that he believed that this man was Jamall Lewis ("Lewis"), a J-Park member who had been in a previous altercation with Elder's brother. Elder denied having a weapon during this attack, and stated that to the best of his knowledge, no one returned fire during this shooting.

{¶7} Cleveland Police Det. James Raynard ("Det. Raynard") located and photographed a number of spent shell casings near the front and side yards of a home on East 134th Street. According to Cleveland Police Officer Vincent Walker, six casings were from a Federal .40-caliber Smith & Wesson weapon, five nearby casings were from a CCI .45-caliber semiautomatic weapon, and another four Blazer 9 mm Luger casings were from a Blazer 9 mm weapon were found immediately across the street.

{¶8} The police subsequently obtained information about the April 15, 2013 shooting from S.L. who testified as part of a plea agreement with the state. Under the terms of the plea, various charges against S.L., including aggravated robbery with firearm and gang specifications, and other offenses, would be tried as juvenile offenses. S.L.

testified that he is a member of the J-Park gang, and that during the afternoon of April 15, 2013, ATM Jack Boyz gang member "Mane" shot at him. S.L. told other J-Park members Lewis, Shropshire, and Lee that "we should all do something about it."

{¶9} According to S.L., Lee subsequently drove the group to the area where S.L. had been fired upon. Lewis was armed with a .40 caliber semiautomatic weapon and Shropshire had a .45 caliber semiautomatic weapon. The group circled the area of East 134 and Caine Avenue several times looking for Mane. They spotted a large group of people, and assumed that they were all ATM Jack Boyz, so they decided to shoot at them. Lee parked the car about a block away and the J-Park members quickly discussed that Lewis and Shropshire would shoot at the group then run back to the car. Lewis and Shropshire subsequently exited the car then returned a short time later, and Lee drove everyone home. Later, the group learned from social media posts the names of the individuals who had been shot.

{¶10} S.L. admitted that when he spoke with police about the shooting, he was unsure of the date. He also admitted that after the shooting, he had been in possession of the .45 caliber weapon, and that he and other J-Park gang members blocked Lee on social media because they believed that Lee was a police informant.

{¶11} After obtaining S.L.'s proffer of evidence, the Garfield Heights Police arrested Lee, and detectives from the Garfield Heights Police Department and the Cleveland Police Department spoke with him. According to the testimony of Cleveland Police Detectives Colin Ginley ("Det. Ginley") and Tim Entenok ("Det. Entenok"), and

Garfield Heights Police Detective Carl Biegacki ("Det. Biegacki"), Lee stated that after the J-Park gang learned that S.L. had been shot at, Lee drove S.L., Shropshire, and Lewis to the area of East 131st Street and Caine Avenue. Lee stated that before they got in the car, he questioned the group as to "why are we going out and doing this for [S.L.]?" The group circled ATM Jack Boyz's territory and parked about a block away from a group of people. Lewis and Shropshire got out of the car, and Lee heard shots being fired. The men then ran back to the car and Lee drove the group to Shropshire's house. Lee told the officers that Lewis told him that he was going to someone's house, and Lee believed that Lewis, and Shropshire were simply going to talk to the ATM Jack Boyz members.

{¶12} The defense presented the testimony of Det. Entenok. Det. Entenok testified that in Lee's statements to the detectives, Lee consistently stated that when he arrived at Shropshire's house in the afternoon of April 15, 2013, Lewis and S.L. were already there, that he did not know about S.L.'s desire to retaliate against the ATM Jack Boyz gang, and that he did not know what Lewis and Shropshire had planned to do after they exited the car. Det. Entenok also acknowledged that he told Lee that he believed that "someone may have shot at or shot back at Lewis and Shropshire."

{¶13} Lee was subsequently acquitted of all of the charges related to the February 21, 2012 shooting, but was convicted of the April 15, 2013 murder of Neal and the attempted murder of Elder, three counts of felonious assault on Neal and Elder, and all of the one-year and three-year firearm specifications for these offenses. The trial court

dismissed the firearm specifications on the charge of discharging a firearm near prohibited premises, and Lee was convicted of a first-degree misdemeanor level offense in connection with this charge. Lee also pled no contest to the criminal gang activity specifications and was convicted of them. The trial court merged the offenses pertaining to each victim and sentenced Lee to nine years on all of the specifications, and a total of fifteen years to life imprisonment on the remaining charges.

### 1. Severance

{¶14} In the first assigned error, Lee asserts that the trial court erred in denying his motion to sever the charges pertaining to the February 21, 2012 shooting death of T.T., from the charges pertaining to the April 15, 2013 shooting of Regina Neal and Charles Elder.

{¶15} We review the trial court's ruling on joinder for an abuse of discretion. *State v. Dean*, 146 Ohio St.3d 106, 2015-Ohio-4347, 54 N.E.3d 80, ¶ 58; *State v. Webster*, 8th Dist. Cuyahoga No. 102833, 2016-Ohio-2624, ¶ 42. The defendant "'bears the burden of proving prejudice and of proving that the trial court abused its discretion in denying severance.'" *Dean* at ¶ 60, quoting *State v. Brinkley*, 105 Ohio St.3d 231, 2005-Ohio-1507, 824 N.E.2d 959, ¶ 29.

{¶16} Under Crim.R. 8(A), two or more offenses may be charged together if the offenses "are of the same or similar character, * * * or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or are part of a course of criminal conduct." However, if it appears that a defendant is

prejudiced by a joinder of offenses, the trial court may grant a severance under Crim.R. 14.

{¶17} If a defendant makes a case for prejudicial joinder, "[t]he state may rebut a defendant's claim * * * in two ways." *Dean* at ¶ 61.

> The state may rebut a defendant's claim of prejudicial joinder in two ways. First, if in separate trials the state could introduce evidence of the joined offenses as "other acts" under Evid.R. 404(B), a defendant cannot claim prejudice from the joinder. [*State v.*] *Lott*, [51 Ohio St.3d 160, 555 N.E.2d 293 (1990)] at 163. Second, the state can refute prejudice by showing that "evidence of each crime joined at trial is simple and direct." *Id*.

*Id*. at 60-61.

{¶18} In *Dean*, the Ohio Supreme Court concluded that the trial court did not abuse its discretion in denying the defendant's motion to sever charges arising from three separate incidents that occurred from April 10, 2014 to April 14, 2014. In reaching this conclusion, the court stated:

> The different offenses were charged together because they were part of a common scheme or plan and occurred over a short period of time. Kaboos provided key testimony as to each of the offenses, and other witnesses testified regarding more than one offense. Thus, the facts indicate that joinder was proper because the offenses were part of a continuing course of criminal conduct. *See State v. Hamblin*, 37 Ohio St.3d 153, 158, 524 N.E.2d 476 (1988).

> * * *[E]ven of these two counts had been tried separately from the other counts, the state would have had to present evidence of other acts—the attempted-murder offenses—in order to prove the specification. *See State v. LaMar*, 95 Ohio St.3d 181, 2002-Ohio-2128, 767 N.E.2d 166, ¶ 51.

> In addition, the evidence of each crime was simple and direct. The state's first witnesses testified about the attempted murders and the robbery at the Mini Mart. The next series of witnesses testified about the drive-by shooting on Dibert Avenue. The rest of the testimony focused on Arnold's

murder. It is highly unlikely that the jury would have confused the murder evidence with the other offenses. *See State v. Johnson*, 88 Ohio St.3d 95, 110, 2000-Ohio-276, 723 N.E.2d 1054 (2000).

*Id*. at 62-64.

{¶19} In this matter, the two shootings occurred over a year apart. However, the evidence presented demonstrated that both shootings were the result of a common scheme or plan as each involved ongoing fighting between ATM Jack Boyz and J-Park gang members. In addition, Elder was a witness in both cases, and in both cases, he was shot at and his companion was killed. The evidence as to each shooting was simple and direct, and it is extremely unlikely that the jury would confuse the evidence from the separate offenses. Additionally, the court instructed the jury that "each of the counts that you are considering * * * are separate matters. They all have their own separate elements that the state has to prove beyond a reasonable doubt." Moreover, there is nothing in the record to suggest that the jury confused the evidence as to the various counts or was improperly influenced by any possible cumulative effect of joinder because the jury considered each offense separately and acquitted Lee of all of the offenses pertaining to the February 21, 2012 shooting. *Accord State v. Nitsche*, 8th Dist. Cuyahoga No. 103174, 2016-Ohio-3170, ¶ 95 (defendant was unable to show that he was prejudiced by the trial court's denial of motion to sever where he was acquitted of one charge and convicted of other offenses); citing *State v. Banks*, 2015-Ohio-5413, 56 N.E.3d 289, ¶ 66-68 (8th Dist.) (defendant was unable to show that he was prejudiced by

the trial court's denial of motion to sever where he was acquitted of some charges and convicted of a lesser offense in others).

**{¶20}** In accordance with the foregoing, we cannot say the trial court abused its discretion in denying Lee's motion to sever counts in the indictment.

**{¶21}** The first assigned error is without merit.

## 2. Removal of Prospective Juror

**{¶22}** Lee next argues that the trial court erred in removing a prospective juror from the panel after learning in voir dire that she had been convicted of a theft offense in 1994 and that the conviction had not been expunged.

**{¶23}** "'[T]he determination of whether a prospective juror should be disqualified for cause is a discretionary function of the trial court. Such determination will not be reversed on appeal absent an abuse of discretion.'" *State v. Madrigal*, 87 Ohio St.3d 378, 393, 2000-Ohio-448, 721 N.E.2d 52, quoting *Berk v. Matthews*, 53 Ohio St.3d 161, 559 N.E.2d 1301 (1990), syllabus.

**{¶24}** Under R.C. 2961.01(A), a person who either pleads guilty to or is found guilty of a felony is incompetent to be a juror unless:

> (1) the plea, verdict, or finding is reversed or annulled, is incompetent to be an elector or juror or to hold an office of honor, trust, or profit [or]

> (2) the person is granted parole, judicial release, or a conditional pardon or is released under a non-jail community control sanction or a post-release control sanction, [then] the person is competent to be an elector during the period of community control, parole, post-release control, or release or until the conditions of the pardon have been performed or have transpired and is competent to be an elector thereafter following final discharge. * * * .

**{¶25}** In addition, under R.C. 2967.16(C)(1), "the following prisoners or person shall be restored to the rights and privileges forfeited by a conviction:

(a) A prisoner who has served the entire prison term that comprises or is part of the prisoner's sentence and has not been placed under any post-release control sanctions;

(b) A prisoner who has been granted a final release by the adult parole authority pursuant to division (A) or (B) of this section;

(c) A person who has completed the period of a community control sanction or combination of community control sanctions, as defined in section 2929.01 of the Revised Code, that was imposed by the sentencing court.

**{¶26}** However, as the court noted in *State v. Harrison*, 2015-Ohio-1419, 31 N.E.3d 220 (3d Dist.), "[e]ven if we assume that the trial court abused its discretion by granting the State's for-cause challenge to [the juror, the defendant] has not shown how this prejudiced him." *Id*. at ¶ 34, citing *State v. Coonrod,* 4th Dist. Pickaway No. 11CA3, 2012-Ohio-6302.

**{¶27}** The *Harrison* court stated:

Harrison did not explain how granting the State's for-cause challenge to Juror No. 99 affected the outcome of the trial. And at any rate, "[a]ny argument that Juror Number [99] would have voted to acquit is speculative." *Id*. at ¶ 31. Therefore, even assuming the trial court abused its discretion by granting the State's for-cause challenge, Harrison failed to demonstrate how the error is anything other than harmless error. *See* [*Coonrod*], citing *State v. Brown*, 2d Dist. Montgomery No. 24541, 2012-Ohio-1848, ¶ 53. *See also State v. Sanders*, 92 Ohio St.3d 245, 249,

2001 Ohio 189, 750 N.E.2d 90 (2001) ("[A]n erroneous excusal for cause, on grounds other than the venireman's views on capital punishment, is not cognizable error, since a party has no right to have any particular person sit on the jury.").

*Id.*

{¶28} Similarly, in this matter, we conclude that Lee failed to demonstrate that he was prejudiced by the trial court's ruling. He has failed to demonstrate that this ruling is anything other than harmless error.

{¶29} In accordance with the foregoing, we conclude that the second assigned error is without merit.

### 3. Self-Defense

{¶30} In the first portion of this assigned error, Lee argues that the trial court erred in failing to instruct the jury regarding self-defense. He asserts that because the crime scene from the April 15, 2013 shooting contained shell casings from three firearms, it "is at least possible that [Lee's] alleged accomplices were not the initial aggressors, and if they acted in self-defense, then [Lee] could not be guilty of complicity." In the second portion of this assigned error, Lee argues that R.C. 2901.05 unconstitutionally places the burden of proving self-defense upon a defendant.

### a. Denial of Self-Defense Instruction

**{¶31}** We review the trial court's failure to provide a self-defense instruction for abuse of discretion. *State v. Sekic*, 8th Dist. Cuyahoga No. 95633, 2011-Ohio-3978, ¶ 9, citing *State v. Fulmer*, 117 Ohio St.3d 319, 2008-Ohio-936, 883 N.E.2d 1052, ¶ 72.

**{¶32}** In order to be entitled to a jury instruction on self-defense, a defendant must meet the burden of going forward with evidence of a nature and quality sufficient to raise an affirmative defense. *State v. Stoutemire*, 8th Dist. Cuyahoga No. 94802, 2011-Ohio-473, ¶ 38, citing *State v. Cross*, 58 Ohio St.2d 482, 391 N.E.2d 319 (1979). *See also State v. Abner*, 55 Ohio St.2d 251, 253, 379 N.E.2d 228 (1978); *State v. Betliskey*, 8th Dist. Cuyahoga No. 101330, 2015-Ohio-1821, ¶ 27. "If the evidence generates only a mere speculation or possible doubt, such evidence is insufficient to raise the affirmative defense, and submission of the issue to the jury will be unwarranted." *Sekic* at ¶10, quoting *State v. Melchior*, 56 Ohio St.2d 15, 20, 381 N.E.2d 195 (1978). The trial court, as a matter of law, cannot give a jury instruction on an affirmative defense if a defendant fails to meet his or her burden of going forward. *Stoutemire*.

**{¶33}** The elements of self-defense through the use of deadly force include that the defendant: (1) was not at fault in creating the situation giving rise to the affray; (2) had a bonafide belief that they were in imminent danger of death or great bodily harm and their only means of escape from such danger was the use of such force; and (3) did not violate any duty to retreat or avoid the danger. *State v. Robbins*, 58 Ohio St.2d 74, 388 N.E.2d 755 (1979), paragraph two of the syllabus.

**{¶34}** In this matter, we note that Lee told the police that immediately after learning that S.L. had been shot at, he questioned "why are we going out and doing this for [S.L.?]" He then drove other individuals to Caine Avenue, and Lewis and Shropshire got out of the car. Lee maintained that he heard gun shots and later drove away after the men returned to the car. Lee also presented testimony from Det. Entenok who admitted that he believed that "someone may have shot at or shot back at Lewis and Shropshire." However, viewing the totality of the evidence, we conclude that there is insufficient evidence of a nature and quality sufficient to meet the burden of production on the affirmative defense of self-defense. There was no evidence to show that Lee and the J-Park group were not at fault in creating the situation, as they willingly went to a hostile situation immediately after S.L. claimed to have been shot at by the rival ATM Jack Boyz gang member. *Accord Sekic,* in which this court stated:

> Even if we believe all of Sekic's testimony over that of the Fords, especially the part where Kris Ford throws the first punch, Sekic created the situation and failed to avoid the danger that led to the physical altercation. According to Sekic's trial testimony, he was afraid the Fords would try to harm him at the convenience store. Also according to Sekic, the "conversation" at the apartment turned to fisticuffs almost immediately. Having willingly advanced toward a volatile situation, where he already thought the others would harm him, he cannot rely on the affirmative defense of self-defense when the others actually do that which he feared. In most circumstances, a defendant may not claim self-defense if he has a reasonable means of retreat from the confrontation. *Melchior*, 56 Ohio St. 2d at 20.

*Id*. at ¶ 15; *accord State v. Tabasso*, 8th Dist. Cuyahoga No. 98248, 2012-Ohio-5747, ¶ 22.

**{¶35}** Further, there was no evidence to show that Lee, Lewis, or Shropshire believed that they were in imminent danger of great bodily harm that mandated the use of force to escape danger. Moreover, Lee's claim that it "is at least possible that [Lee's] alleged accomplices were not the initial aggressors, and if they acted in self-defense, then [Lee] could not be guilty of complicity," together with Det. Entenok's testimony that he believed that "someone may have shot at or shot back at Lewis, and Shropshire," generates only a mere speculation regarding the possibility of self-defense. *Melchior* at 20 ("If the evidence generates only a mere speculation or possible doubt, such evidence is insufficient to raise the affirmative defense, and submission of the issue to the jury will be unwarranted.")

**{¶36}** In accordance with the foregoing, we cannot conclude that the trial court erred in failing to instruct the jury on the issue of self-defense.

**{¶37}** This portion of the assigned error is without merit.

### b. Burden of Proving Self-Defense

**{¶38}** Lee next asserts that R.C. 2901.05, which places the burden on the defendant to prove self-defense, is unconstitutional. Relying upon *Dist. of Columbia v. Heller*, 554 U.S. 570, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008), Lee maintains that the Second Amendment establishes a presumptive right of self-defense, requiring the state to prove lack of self-defense. Lee notes that this court has previously rejected this argument but he seeks to preserve the assigned error for future review.

**{¶39}** In *State v. Simmons*, 8th Dist. Cuyahoga No. 104080, 2017-Ohio-183, this court noted that R.C. 2901.05(A), which places the burden of self-defense upon the defendant, withstood constitutional scrutiny in *Martin v. Ohio*, 480 U.S. 228, 234-236, 107 S.Ct. 1098, 94 L.Ed.2d 267 (1987). The *Simmons* court additionally noted that although *Heller* established that the Second Amendment protects an individual's right to possess a firearm in the home for the purpose of self-defense, "'nothing in *Heller* purports to alter the way the states have defined self-defense.'" *Simmons* at ¶ 23, quoting *State v. Warmus*, 197 Ohio App.3d 383, 2011-Ohio-5827, 967 N.E.2d 1223, ¶ 47 (8th Dist.). Additionally, the *Simmons* court noted that the Eighth District rejected similar Second Amendment-based challenges to R.C. 2901.05(A) in *State v. Porter*, 2016-Ohio-1115, 61 N.E.3d 589, ¶ 45 (8th Dist.); *Betliskey*, 2015-Ohio-1821 at ¶ 39; and *State v. Hudson*, 8th Dist. Cuyahoga No. 96986, 2012-Ohio-1345, ¶ 23.

**{¶40}** In accordance with the foregoing, this portion of the third assigned error is without merit.

**{¶41}** The third assigned error is without merit.

### 4.   Weight of the Evidence

**{¶42}** Lee maintains that the conclusion that he acted in concert with the principal offenders of the April 15, 2013 shooting is against the manifest weight of the evidence.

**{¶43}** In *State v. Thompkins*, 78 Ohio St.3d 380, 387, N.E.2d 541 (1997), the court explained a challenge to the manifest weight of the evidence as follows:

Weight of the evidence concerns "the inclination of the *greater amount of credible evidence*, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the *greater amount of credible evidence* sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its *effect in inducing belief.*" (Emphasis added.) *Black's* [*Law Dictionary* (6th Ed.1990) 1594].

When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "'thirteenth juror'" and disagrees with the factfinder's resolution of the conflicting testimony. [Quoting *Tibbs v. Florida*, 457 U.S. 31, 45, 102 S. Ct. 2211, 2220, 72 L.Ed.2d 652 (1982)]. *See also State v. Martin* (1983), 20 Ohio App.3d 172, 175, * * *, 485 N.E.2d 717, 720-721 ("The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.")

*Id.*

{¶44} In this matter, the state presented Elder's testimony that he recognized Lewis as one of the gunmen in the April 15, 2013 shooting. S.L. testified that earlier that afternoon, ATM Jack Boyz gang member "Mane" shot at him, and he told other J-Park members, Lewis, Shropshire, and Lee to "do something about it." Lee subsequently drove the group to the ATM Jack Boyz territory. According to S.L., Lewis was armed with a .40 caliber semiautomatic weapon and Shropshire had a .45 caliber semiautomatic weapon. The group circled the area, and then decided to shoot at a group of people believed to be ATM Jack Boyz gang members. Lee parked the car about a block away from this group. According to S.L., the J-Park members quickly discussed that Lewis and Shropshire would shoot at them and run back to the car. Lewis and Shropshire subsequently exited the car then returned a short time later, and Lee drove everyone home. Lee's statements indicated that before they got in the car, he questioned the group as to "why are we going out and doing this for [S.L.]?" Lee admitted that he drove them to the ATM Jack Boyz territory. Lewis and Shropshire exited the car, shots rang out, and Lee quickly drove them all away.

{¶45} From all of the foregoing, we cannot say that the conviction is against the manifest weight of the evidence. In weighing the evidence and all reasonable inferences, and considering the credibility of witnesses and resolving conflicts in the evidence, we cannot say that the jury clearly lost its way and created a manifest miscarriage of justice in convicting Lee in this matter. Rather, the manifest weight of the

evidence demonstrated that Lee aided and abetted in the commission of the offenses with his other gang members, while sharing the criminal intent of his principals, Lewis and Shropshire.

**{¶46}** This assigned error is without merit.

### 5. Prosecutorial Misconduct

**{¶47}** Lee next asserts that the prosecuting attorney made improper statements during his closing argument, including asserting that Lee had no reason to go to the scene if "one is a J-Park member," that Lee has a "death taxi," that the area had "ATM bodies that have been killed," and that it didn't matter if the victim fired first.

**{¶48}** Prosecutors are entitled to latitude as to what the evidence has shown and what inferences can be drawn from the evidence. *State v. Diar*, 120 Ohio St.3d 460, 2008-Ohio-6266, 900 N.E.2d 565, ¶ 213. The test for prosecutorial misconduct is whether remarks were improper and, if so, whether they prejudicially affected substantial rights of the accused. *State v. Smith*, 87 Ohio St.3d 424, 442, 721 N.E.2d 93 (2000), citing *State v. Smith*, 14 Ohio St.3d 13, 14, 470 N.E.2d 883 (1984). The touchstone of analysis "is the fairness of the trial, not the culpability of the prosecutor." *Id.*, citing *Smith v. Phillips*, 455 U.S. 209, 219, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982).

**{¶49}** Beginning with the prosecuting attorney's statement that Lee had no reason to go to the scene if "one is a J-Park member," we note that while such statement, standing alone, would not be a proper argument, in this particular instance, it was a fair comment on the evidence. Lee's own statement to police indicated that it would not be

safe for J-Park members to go to ATM Jack Boyz territory, and a J-Park member would not go there unless he was looking for trouble. In addition, the testimony of S.L. demonstrated that if a J-Park member goes into ATM Jack Boyz territory, he would be there "to fight or something like that." Accordingly, we find no prejudicial error in connection with this portion of the argument.

{¶50} As to the comment that Lee has a "death taxi," this comment, though extreme, was a reasonable inference from the evidence presented and did not deprive Lee of a fair trial.

{¶51} The prosecuting attorney's argument that a particular area "is littered with ATM bodies that have been killed," was likewise not prejudicial as this statement is a fair comment upon the "ATM Dead Zone," and "R.I.P." graffiti depicted in the state's exhibits from the area immediately near the April 15, 2013 shooting, and from the evidence demonstrating that there is a high crime rate in the area coinciding with gang territories. The comment was not prejudicially erroneous. *Accord State v. Jefferson*, 2d Dist. Montgomery No. 15828, 1997 Ohio App. LEXIS 887 (Mar. 14, 1997) ("The record does not demonstrate that the prosecutor exceeded the legitimate use of this information or employed the religious or gang affiliations of the witnesses in such a way as to inflame the jury against them.").

{¶52} Finally, as to the prosecuting attorney's argument that it didn't matter if the victim fired first, this was a correct remark based upon the court's previous ruling prohibiting an instruction on self-defense.

**{¶53}** The fifth assigned error is without merit.

### 6.  Objection to Defense's Closing Argument

**{¶54}** In this assigned error, Lee asserts that the trial court erroneously prevented him from presenting argument concerning his reasonable theory of self-defense by sustaining the state's objection to the following portion of the defense's closing argument:

> [The State] may say that if the J-Park folks [who were with Lee] went on the street that night, that whatever happens at that point, is the J-Park member's fault.

> But if somebody returned fire at the J-Park folks or somebody initiated fire at the J-Park folks and one of those bullets went astray and struck Ms. Neal, you cannot say that there was murder in the minds of the J-Park people[.]

**{¶55}** Lee additionally complains that the trial court compounded the error when it gave the jury the following curative instruction:

> [A]ny suggestion that self-defense would be an available defense is wrong and improper.  So you are not to consider whether someone in some speculative account of what may have occurred, that self-defense would have been a possible [defense].

**{¶56}** "'[B]oth the prosecution and the defense have wide latitude in summation as to what the evidence has shown and what reasonable inferences may be drawn therefrom.'"  *State v. Lott*, 51 Ohio St.3d 160, 165, 555 N.E.2d 293 (1990), quoting *State v. Stephens*, 24 Ohio St.2d 76, 82, 263 N.E.2d 773 (1970).   A trial court may limit

arguments that are unduly time consuming, "stray unduly from the mark, or otherwise impede the fair and orderly conduct [of the trial]," but denying an accused the right to make final arguments on his theory of the defense denies him the right to assistance of counsel. *State v. Tatum*, 8th Dist. Cuyahoga No. 99818, 2014-Ohio-386, ¶ 16, citing *Herring v. New York*, 422 U.S. 853, 862, 95 S.Ct. 2550, 45 L.Ed.2d 593 (1975). This court reviews a trial judge's limitations on closing arguments for an abuse of discretion. *State v. Powell*, 177 Ohio App.3d 825, 2008-Ohio-4171, 896 N.E.2d 212, ¶ 44 (4th Dist.).

**{¶57}** In this matter, the trial court informed defense counsel that a self-defense instruction would not be given because "[t]here's no evidence of self-defense here. There's not. It's not there. It's all speculation." Later, defense counsel made the argument to the jury that if someone from the J-Park group returned fire, "you cannot say that there was murder in the minds[.]" Following our review of the record, we conclude that the trial court properly restricted defense counsel's argument in this instance. Therefore, we conclude that the trial court correctly barred the defense from improperly speculating on hypothetical evidence that was not a proper theory of the defense. We find no abuse of discretion.

**{¶58}** As to the curative instruction, we note that curative instructions have been recognized as an effective means of remedying errors or irregularities that occur during trial. *State v. Ghaster*, 8th Dist. Cuyahoga No. 91576, 2009-Ohio-2134, ¶ 20, citing *State v. Zuern*, 32 Ohio St.3d 56, 61, 512 N.E.2d 585 (1987). In this matter, the court's curative instruction properly notified the jury, consistently with the court's prior ruling,

that self-defense was not an issue for their consideration after defense counsel improperly argued that if J-Park members returned fire, "you cannot say that there was murder in the minds of the J-Park members." We find no error.

{¶59} The sixth assigned error is without merit.

### 7. Lee's Absence During Response to Jury Question

{¶60} Lee next asserts that the trial court committed prejudicial error by responding to a jury question in his absence.

{¶61} A defendant has a fundamental right to be present at all critical stages of his criminal trial. *State v. Hill*, 73 Ohio St.3d 433, 444, 653 N.E.2d 271 (1995), citing Crim.R. 43(A) and the Ohio Constitution, Article I, Section 10. However, in *State v. Campbell*, 90 Ohio St.3d 320, 346, 738 N.E.2d 1178 (2000), the court found no error where a capital murder defendant was absent from an in-chambers discussion between the court and counsel regarding the trial court's response to a jury question. The court stated:

> Campbell had no right to be present at the legal discussion of how the question should be answered. Nor did he have a right to be present when the judge sent the note to the jury room. Although the oral delivery of jury instructions in open court is a critical stage of trial, the trial court here did not instruct the jury in open court; instead, he sent a note. A defendant benefits from his presence, and may be harmed by his absence, when instructions are given in open court. But these potential benefits and harms do not exist when the judge merely sends a note to the jury room. We therefore hold that the sending of the note was not a critical stage of the trial. (Citations omitted.)

*Id.* at 346.   *See also State v. Ferguson*, 8th Dist. Cuyahoga No. 86439, 2006-Ohio-799, ¶ 56 (concluding that "the discussion regarding the jury question was not a critical stage of the trial.").

**{¶62}** Later, in *State v. Frazier*, 115 Ohio St.3d 139, 2007-Ohio-5048, 873 N.E.2d 1263, the Ohio Supreme Court found no prejudicial error where the trial court responded to a jury question in open court after defense counsel waived defendant's presence.   *Id.* at ¶ 148.

**{¶63}** In this matter, the record demonstrates that the jury submitted the following question to the court, "[i]f offender is found guilty of a felonious assault, does the offender also have to be found guilty of murder?"   The court then met with the attorneys and drafted the following response:

> [i]f the Defendant was convicted of felonious assault regarding one and/or both of the alleged decedents * * * in order to find the Defendant guilty of murder you would have to find that the State proved beyond a reasonable doubt that the felonious assaults proximately caused the death of the alleged victim, because the murder has an additional element that you have to, the State has to prove that if a felonious assault occurred that that felonious assault proximately caused the death of the decedent.   That's an additional element in a murder.

**{¶64}** The record further demonstrates that after the jury was given that response, they continued to have confusion and submitted the following note to the court:

> If offender is found guilty of a felonious assault based upon the jury's deciding that Defendant was driving the car * * *and had knowledge of situation, is he guilty of both murder and felonious assault?

**{¶65}** At that point, the court summoned the jury with counsel present.   The record also demonstrates that defense counsel waived Lee's presence.   (Tr.   1030,

1041.)  The court then informed the jury that in order to convict Lee of murder, if would have to find as follows:

> the additional element that you would have to find is that the death is the result of the Defendant's act or failure to act when it is produced in a natural and continuous sequence and would not have occurred without the act or failure to act.  That's the element of proximate cause on the additional element of murder that the State needs to prove.

**{¶66}** Considering the first portion of the court's response, we find no error by application of *Campbell*, because the court's written response sent to the jury room was not a critical phase of the trial that required Lee's presence.  Turning to the second communication with the jury present, the record clearly demonstrates that defense counsel was present for the question and the court's responses and counsel waived Lee's presence.  Accordingly, this assigned error is without merit.  *Frazier.*  Moreover, Lee has not demonstrated any error in connection with the instruction provided to the jury. *Accord State v. Blackwell*, 16 Ohio App.3d 100, 102, 474 N.E.2d 671 (10th Dist.1984).

**{¶67}** The seventh assigned error is without merit.

**{¶68}** Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.  The defendant's conviction having been affirmed, any bail pending appeal is terminated.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

_____

PATRICIA A. BLACKMON, PRESIDING JUDGE

FRANK D. CELEBREZZE, JR., J., and
LARRY A. JONES, SR., J., CONCUR